IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2006 Session

# LINDA RIGGAN WOOD, ET AL. v. TERRY RIGGAN LOWERY, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**Nos. CH-03-1197-1, CH-04-0254-3    The Honorable Walter Evans, Chancellor**

---

**No. W2006-00901-COA-R3-CV - Filed March 6, 2007**

---

Appellant challenges the trial court's judgment dismissing Appellant's claims against the Executrix of her father's estate and enforcing the agreement made by the Appellant with her siblings to share equally in the net assets of her father's estate. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. joined and HOLLY M. KIRBY, J., concurs separately.

Henry L. Klein of Memphis, Tennessee for Appellant, Terry Riggan Lowery

John D. Horne of Memphis, Tennessee for Appellees, Linda Riggan Wood and Cheryl Riggan Benson

John C. Speer and Mary Katherine Hovious of Memphis, Tennessee for Appellee, First Tennessee Bank National Association

**OPINION**

## I.    Facts and Procedure

Charles M. Riggan ("Mr. Riggan"), a businessman and owner of an automobile dealership, died on February 27, 1997, in Shelby County, Tennessee. Mr. Riggan was survived by three daughters, Linda Riggan Wood ("Ms. Wood," "Linda Wood," "Linda,""Plaintiff," "Appellee"), Cheryl Riggan Benson ("Ms. Benson," "Cheryl Benson," "Cheryl,""Appellee"), and Terry Riggan Lowery ("Ms. Lowery," "Terry Lowery," "Terry,""Defendant," "Appellant"). At the time of his death, Mr. Riggan left an executed Last Will and Testament, dated December 24, 1996, and an executed Codicil to that Will, dated January 15, 1997. The Last Will and Testament, along with the Codicil, were admitted to probate on March 3, 1997, in the Probate Court of Shelby County, Tennessee.

Pursuant to the testamentary documents and the proceedings in the probate court, Linda Wood was appointed Executrix of the estate of Mr. Riggan. Linda administered Mr. Riggan's estate from its opening on March 3, 1997 until the estate was closed six years later on March 3, 2003.

Mr. Riggan's Will contained provisions for Linda Wood and Terry Lowery, but it contained no provision for Cheryl Benson. Soon after Mr. Riggan's death, all three of his children met with the family attorney, and Mr. Riggan's Will and Codicil were presented to the children for the first time. At that meeting, Linda, Terry, and Cheryl learned for the first time that Mr. Riggan had made no provision for Cheryl in his Will. Cheryl was informed by the family attorney that she had a right to contest the Will and Codicil in the probate court as an omitted child of the deceased.

Notwithstanding the provisions for distribution contained in Mr. Riggan's Will, Linda and Terry voluntarily agreed that they would share the net assets of their father's estate equally with Cheryl, with the exception of the home located at 2500 Houston Levee Road, which would be shared equally by only Linda and Terry. Following the opening of the estate and continuing through its administration, the three sisters received regular monthly distributions from the estate in the amount of $2,000.00 each from Linda, the Executrix, pursuant to the equal sharing agreement. Further, Linda, Terry, and Cheryl shared equally in the proceeds of Linda's sale of a diamond that had been owned by Mr. Riggan. On June 15, 1998, Linda and Terry reduced to writing a notarized document confirming their previous agreement to share their interests in their father's estate equally with Cheryl, except for the residence located at 2500 Houston Levee Road.

During his lifetime, Mr. Riggan had involved John Lowery, Terry Lowery's former husband, in many of his business ventures. Around June 1996, Mr. Riggan and John formed a business known as Revelation Corporation of America ("Revelation"), which was designed to promote economic opportunities for members of several African-American religious denominations. Mr. Riggan and John Lowery also formed, as equal shareholders, another company known as Lowery Riggan Co., which owned 30 percent of Revelation Corporation. Up until the time of his death, Mr. Riggan had loaned over one million dollars to Revelation Corporation. At the time of Mr. Riggan's death, the value of the stock in both Revelation and Lowery Riggan was zero.

During the course of administering Mr. Riggan's estate, Linda Wood made numerous payments to John Lowery and the Revelation Company from funds of the estate. She also paid service providers, financial institutions who made loans to Revelation, advertisers, CPA's, and lawyers on behalf of Revelation. There were several loans made to Revelation and/or John Lowery from several entitites. These loan funds were deposited into the estate account and were paid out to either John Lowery personally or for debts of Revelation Corporation.

On July 29, 1997, in order to memorialize the loans that Mr. Riggan made to Revelation, Linda Wood had John Lowery execute a Promissory Note on behalf of Revolution in favor of the estate in the amount of $1,074,796.43. Later, on August 1, 1997, Linda had John provide a life insurance policy on himself in the amount of one million dollars in an attempt to secure the funds owed to the estate. Linda testified that she believed that the loans she was making to Revelation and

John Lowery from the estate were in furtherance of her father's business practices and were made in an effort to protect the principal assets of the estate. Linda documented all funds that she loaned to revelation and John. Linda also had John execute a security agreement in which he pledged all of his 50 shares of Lowery Riggan Co., constituting 15% of the ownership of Revelation, to the estate.

Mr. Riggan's Will also contained a provision that his children or any guardian of his children be allowed to reside in any residence owned by Mr. Riggan at the time of his death rent free. At the time of Mr. Riggan's death, Linda Wood was residing in the family residence on Houston Levee Road (the "Houston Levee property"), and Terry Lowery was residing at the residence located on Gladeview Road (the "Gladeview property"). During the administration of the estate, Linda made payments from the estate for various expenses related to maintaining the Houston Levee property.

In 1991, Terry and John transferred the Gladeview property to Ms. Ruby Riggan, Terry's mother and Mr. Riggan's wife. After Ms. Riggan's death, Mr. Riggan transferred the Gladeview property to himself and Terry as "joint tenants with right of survivorship." At some point after Mr. Riggan's death, Linda informed Terry that the estate could not continue making the $2,200.00 per month mortgage payments on the Gladeview property. Therefore, in August 1997, Terry sold the Gladeview property, paid off the mortgage, and received all of the proceeds from the sale.

Linda paid attorneys fees to the estate attorney in the amount of $212,700.75 out of funds of the estate. Additional attorneys fees were paid from the estate to other attorneys who were hired to discharge other claims against the estate. Linda paid herself Executrix fees totaling $100,000. None of the attorney fees or Executrix fees were submitted for approval or approved by the probate court, Terry, or Cheryl.

About five years after the estate was opened, Terry wrote to the estate attorney, J. Richard Rossie, expressing concern over the length of time the estate had remained open and requesting a meeting to discuss the administration of the estate. In early November 2002, Terry met with Linda and Attorney Rossie to discuss the administration of Mr. Riggan's estate. In February 2003, Terry's attorney confirmed his representation of Terry and her intention to not honor her agreement to share equally in the estate with Cheryl. On February 28, 2003, Linda transferred the remaining assets of Mr. Riggan's estate to First Tennessee Bank, as Trustee, of Mr. Riggan's Residuary Trust. On March 3, 2003, an order was entered in the probate court discharging Linda as Executrix and closing Mr. Riggan's estate.

On June 23, 2003, Linda and Cheryl filed a complaint in the Shelby County Chancery Court against Terry and First Tennessee, seeking specific performance of the agreement for the three of them to share equally in the assets of the estate. The complaint further sought to enjoin First Tennessee from making distributions from the Trust pending a ruling by the chancery court. On August 6, 2003, Linda filed an answer and a cross-claim against First Tennessee Bank. On February 6, 2004, Terry filed a separate lawsuit against Linda and First Tennessee Bank, alleging that Linda had mismanaged the estate funds. The cases were later consolidated by the trial court. Terry

Lowery's claims against First Tennessee Bank were dismissed pursuant to an order granting summary judgment in favor of First Tennessee which was entered August 2, 2005. The remaining issues in the consolidated case were heard in a bench trial in August and November of 2005.

The trial court entered its Findings of Fact and Conclusions of Law on March 10, 2006. A final judgment was entered on April 4, 2006. The judgment states in pertinent part:

> [T]he Court finds that Lowery is estopped to deny the enforceability of the agreement attached as Exhibit A to the Complaint in Case No. CH-03-1197-1 that she and Wood made to share the net proceeds of Charles S. Riggan's estate with Benson (except for the residence located at 2500 Houston Levee Road which Wood and Lowery agreed to share equally), and that Wood and Benson are entitled to specific performance of that agreement. It further appears to the Court that Lowery has failed to carry her burden of proof in Case No. 04-0254-3, that Wood failed to act in good faith in carrying out her duties as Executrix of the Estate of Charles S. Riggan, and that Lowery's Complaint in Case No. CH-04-0254-3 should be dismissed with prejudice.

> The Court further finds from the express language of the Trust, the testimony of the parties and witnesses, and the entire record in the cause, that First Tennesssee should be authorized and directed to consolidate the Trust accounts that it had established for Wood and Lowery, to terminate the Trust, to transfer the residence located at 2500 Houston Levee Road to Wood and Lowery for sale as provided below, to liquidate the remaining consolidated assets of the Trust to cash to the extent possible, to deduct its final administrative fees and expenses, to render a final accounting to the parties, and to disburse all remaining net proceeds of the Trust in equal shares among Wood, Benson and Lowery, after making adjustments to the respective shares of Wood and Benson for any promissory notes executed by them.

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

-4-

1. Wood and Benson are hereby awarded Judgment against Lowery for Specific Performance of Trial Exhibit 9 ..., requiring the consolidated net assets of the Trust (except for the residence at 2500 Houston Levee Road) as well as the remaining items of jewelry from the Estate of Charles S. Riggan (Trial Ex. 45), to be divided equally among Wood, Lowery, and Benson.

2. Wood, Benson and Lowery shall agree upon a division of the remaining items of jewelry from the Estate of Charles S. Riggan (Trial Ex. 45), or in the event they cannot agree, a neutral shall be appointed by the Court who shall inventory, appraise, and sell the jewelry and distribute the net sales proceeds therefrom equally among Wood, Benson, and Lowery.

3. Lowery's claims against Wood in Case No. CH-04-0254-3(1), are hereby dismissed with prejudice.

4. First Tennessee is hereby authorized and directed to take the following actions to terminate the Trust immediately:

\* \* \* \*

g. All remaining net proceeds of the Trust shall be divided in equal shares among Wood, Benson and Lowery, and First Tennessee shall distribute such shares within 15 days of the final accounting rendered by First Tennessee in accordance with the terms of this Order.

\* \* \* \*

Terry Lowery filed a Notice of Appeal on April 20, 2006.

## II. Issues

Ms. Lowery raises the following seven issues for review as stated in her brief:

1. Whether the Trial Court erred in finding that the agreement executed by Appellant, Terry Lowery ("Lowery"), and Appellee, Linda Wood ("Wood"), to divide their father's Estate equally among themselves and their sister, Cheryl Benson ("Benson"), was a valid contract.

a. Whether there was valid consideration for the agreement.

b. Whether the agreement was precluded by the spendthrift provision contained in the Last Will and Testament of Charles S. Riggan ("Riggan").

c. Whether all the necessary parties were signatory to the agreement.

d. Whether the agreement to divide the father's Estate was a gift, and if so whether Lowery effectively revoked same.

2. Whether the trial court erred in finding that Wood acted in good faith and in the best interest of the Estate's beneficiaries in discharging her duties as Executrix of the Estate.

a. Whether distribution of funds to Revelation Corporation of America ("Revelation") and John Lowery was done in good faith and in the best interest of the beneficiaries.

b. Whether it was appropriate for Wood to pay herself an Executrix fee and certain fees to the attorney for the Estate.

c. Whether Wood is liable for Notes executed by her and Benson.

d. Whether Wood used excessive funds from Estate funds for the maintenance of the residence on Houston Levee Road.

e. Whether Wood is entitled to reimbursement for rental expenses following the sale of the Gladeview property.

3. Whether the trial court erred in finding that Lowery's claim against Wood was barred by Tennessee's three-year statute of limitations.

4.      Whether Lowery's claims of mismanagement and bad faith are barred by the Doctrine of Judicial Estoppel.

5.      Whether Lowery is entitled to recover possession of the diamond which was previously given to her by her father prior to his death.

6.      Whether Wood is liable for punitive damages.

7.      Whether the trial court erred in finding that Appellee First Tennessee Bank was entitled to judgment as a matter of law regarding Lowery's claims against it.

     a.      Whether the Trial Court erred in holding that First Tennessee Bank's duties as trustee began only after the Estate was closed and the trust was completely funded.

     b.      Whether the Trial Court erred in holding that the will exonerated First Tennessee fully and completely for any actions taken by Linda Riggan Wood in her capacity as Executrix.

     c.      Whether the Trial Court erred in holding that First Tennessee had no duties under the terms of the Will to obtain an accounting from the Estate at the time it received the residue thereof.

     d.      Whether the Trial Court erred in finding that there was no evidence in the record of reckless indifference or willful misconduct by First Tennessee in its administration of the residuary trusts.

     e.      The Trial Court erred in granting First Tennessee Bank's Motion for Summary Judgment.

## III.      Analysis

In this appeal, the trial court's findings of fact will be reviewed de novo upon the record, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).   Our review of the trial court's conclusions of law is de novo upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *Id.; Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

Questions relating to the good faith of an executor in carrying out her activities in the administration of an estate are questions of fact, for which the appellate court's standard of review shall be de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise. *Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001).

**A.      Validity of agreement between Terry Lowery and Linda Wood to divide their father's estate equally among themselves and their sister, Cheryl Benson**

The Appellant, Terry Lowery, argues that the trial court erred in holding that the agreement executed by Ms. Lowery and Ms. Wood to divide their father's estate equally among themselves and their sister, Ms. Benson, was a valid contract. Ms. Lowery argues that there was no consideration for the agreement and that the agreement was precluded by the spendthrift provision contained in the Last Will and Testament of Charles S. Riggan. Further, Ms. Lowery argues that the agreement was not a valid contract because all of the necessary parties did not sign the agreement. Finally, Ms. Lowery argues that the agreement to divide the estate between the three sisters was a gift that was revoked by Ms. Lowery prior to delivery.

A contract has been defined over the years as an agreement, upon sufficient consideration, to do or not to do a particular thing. *Smith v. Pickwick Electric Cooperative*, 367 S.W.2d 775, 780 (Tenn. 1963). A party attempting to prove the existence of a contract is required to show that the agreement on which he relies was supported by adequate consideration. *Price v. Mercury Supply Co., Inc*., 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984). "[I]n all simple contracts ... whether written or verbal, the consideration must be averred and proved." *Clark v. Small*, 14 Tenn. 418, 421 (1834).

The question of what constitutes consideration adequate or sufficient to support a contract has been addressed by a number of Tennessee courts. The court in *University of Chattanooga v. Stansberry*, 9 Tenn. App. 341, 343 (1928), defined consideration as "either a benefit to the maker of the promise or a detriment to, or obligation upon, the promise[e]." Id. In *Palmer v. Dehn*, 198 S.W.2d 827 (Tenn.Ct.App.1946), this Court said, "For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration." *Id.*

In addition to the benefit/detriment paradigm, Tennessee courts have defined valid consideration in terms of the promisee's legal rights and obligations. "Consideration [exists] when the promisee does something that he is under no legal obligation to do or refrains from doing [that] which he has a legal right to do." *Kozy v. Werle,* 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995) (citing *Brown Oil Co., Inc. v. Johnson*, 689 S.W.2d 149 (Tenn .1985)).

In this case, Terry was under no legal obligation to give up a portion of the proceeds from the estate; however, she made an enforceable promise to Linda and Cheryl that she would share equally with her sisters in the assets of the estate. Further, Cheryl had a legal right to bring a legal

action to contest Mr. Riggan's Will as an omitted child of the deceased and was advised of that right by an attorney. In return for the agreement of Terry and Linda to share equally in the estate, Cheryl refrained from contesting the Will. Therefore, the agreement reached between the three sisters was supported by sufficient consideration.

Ms. Lowery also argues that the agreement between the three sisters was precluded by the spendthrift provision contained in the Last Will and Testament of Charles S. Riggan. That provision states, "No beneficiary of any trust herein created shall have the power to anticipate or assign, sell, transfer or otherwise dispose of his or her portion or interest in the principal of such trust or the rents, income, avails or proceeds therefrom before such property shall come into the beneficiary's possession, and neither the principal of any trust nor any income therefrom shall be subject to execution or other legal process for any liability of any such beneficiary; provided, however, nothing in this paragraph shall, in any manner whatsoever, prohibit or prevent the right of any beneficiary to exercise any right to disclaim or renounce any property or interest therein devised or bequeathed to or for the benefit of such beneficiary." However, the provision provides that beneficiaries may make assignments of their interests in the estate when "such property shall come into the beneficiaries' possession." Following the opening of the estate and continuing through its administration, the three sisters each received regular monthly distributions from the estate in the amount of $2,000.00 each, pursuant to the equal sharing agreement. Therefore, this argument is without merit.

Ms. Lowery also argues that the agreement is not valid because the signed agreement did not contain all of the necessary parties to the agreement. Ms. Lowery argues that because the Will provided that the entire residuary estate be given to Lowery and Wood, with the remainder to their children, that the children of Wood and Lowery were necessary parties to the signed written agreement. However, Ms. Lowery cites no authority which supports her proposition that the beneficiaries of a remainder estate be required as necessary parties to any sharing agreement. Finally, Ms. Lowery argues that the agreement to divide the estate between the three sisters was a gift that was revoked by Ms. Lowery prior to delivery. However, Ms. Lowery was paid and accepted the fruits of the agreement for approximately six years.

Reaching family compromises has always been looked upon with favor by the courts. *Alexander v. Rhodes*, 474 S.W.2d 655, 659 (Tenn. Ct. App. 1971). In *Alexander*, this Court stated, "No doubt this view has been taken on the theory that a family in particular, and society in general, has little to gain by the public viewing of family grievances or disputes." *Id.* Further, in *Williams v. Jones*, this Court stated:

> Family settlements are favored in the law. 'In cases relating to the adjustment of family disputes where the motive is to preserve the honor or peace of the family or the family property, the courts will not closely scrutinize the consideration or look into the merits of the dispute where all is fair and aboveboard. The courts will decree performance of all reasonable settlements if possible, even though

they may, at times, rest on grounds which would not have been satisfactory if the transaction had occurred between mere strangers, subject, however, to a proper regard for the principles that govern the courts in the specific enforcement of compromise agreements where this form of remedy is sought.'

*Williams v. Jones*, 388 S.W.2d 665, 672 (Tenn. Ct. App. 1963) (citing 11 Am. Jur. 259, Compromise and Settlement).

In this case, in the spirit of preventing a family dispute, Terry Lowery and Linda Wood made an agreement to share equally with Cheryl in the assets of the estate. On June 15, 1998, Terry and Linda reduced their agreement to writing in a signed document detailing their agreement to share the estate equally with Cheryl. Further, over the six year period during which the estate was being administered, all three sisters assented to the Agreement by accepting the benefits of the Agreement (the equal distribution among the three sisters). When Terry Lowery decided to back out of the agreement to share the estate with her two sisters, more than six years had elapsed from the date of probate, and the two year statute of limitation on Cheryl's right to contest the will had lapsed. See T.C.A. 32-4-108. Therefore, the trial court was correct in holding that the agreement between the three sisters to share equally in the estate was a valid, enforceable contract and that Terry was estopped to deny the enforceability of her agreement with her sisters..

## B.     Wood's performance as Executrix of the Estate

Terry Lowery also argues that the trial court erred in finding that Wood acted in good faith and in the best interests of the estate's beneficiaries in discharging her duties as Executrix of the estate. Ms. Lowery argues that Wood's distribution of funds to Revelation and John Lowery was not done in good faith and in the best interests of the beneficiaries and constituted waste and mismanagement. Lowery further argues that Wood improperly paid herself an Executrix fee and paid excessive fees to the estate attorney. Lowery argues that Wood should be held liable for Notes executed by her and Benson. Lowery also argues that the trial court erred in finding that Lowery was not entitled to reimbursement for expenses Wood paid in the maintenance and upkeep of the Houston Levee Road property, and Lowery argues that the trial court erred in denying rental reimbursement payments to Lowery.

Charlie Riggan addressed his intentions for the Executor in his will. Mr. Riggan intended for Linda to have broad discretion in her handling of his affairs after his death. For example, Mr. Riggan directed that the Executrix should handle business matters as she "shall deem proper and for the best interest of the beneficiaries, irrespective of any rules governing the investment of trust funds." Additionally, Mr. Riggan provided that his Executor could retain investments "without liability for loss or depreciation resulting from such retention, original property, real or personal, received from my estate, for such time as the fiduciary shall deem advisable, although such property may not be of the character prescribed by law for the investment of trust assets, and although it

represents a large percentage of all my estate or trust estate, and such original property may accordingly be held as a permanent investment." Further, Mr. Riggan's will states:

> [T]he fiduciary shall be exonerated from any liability to all living or unborn beneficiaries for any other action taken or omissions made, if the fiduciary shall, in addition to acting in good faith, obtain the written consent of all the living beneficiaries of my estate or the trust to which such action or omission pertains... . The fiduciary shall in no event be required to seek such written consent, and the lack of such written consent shall not be considered as evidence to establish a lack of good faith, negligence or liability on the part of the fiduciary. It shall not be necessary for the Executor or Trustee ...

> [t]o obtain the authority or approval of any court in the exercise of any of the rights, powers and authorities granted to them herein in this Will.

The trial court observed the credibility and demeanor of all of the witnesses testifying in the trial of this case and determined that Linda was a credible witness who acted in good faith. In its Findings of Fact, the trial court stated, "Linda, who this Court finds to be a credible witness, believed that the loans she was making to Revelation and John from the Estate were in furtherance of her father's business practices, were made in an effort to protect principal assets of the Estate, and were in the best interest of the Estate." Linda testified that she believed she acted in the best interests of all of the beneficiaries, including Terry Lowery. The trial court, believing Linda to be a credible witness, determined that her actions as Executrix were made in good faith. The weight, faith and credit to be given to any witness' testimony lies with the trier of fact and the credibility accorded will be given great weight by the appellate court. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47 (Tenn. 1959); *Sisk v. Valley Forge Ins*. Co., 640 S.W.2d 844 (Tenn. Ct. App. 1982).

Tennessee courts have addressed the obligations of an Executrix in handling estates. The Executrix owes the estate a duty of good faith and diligence in amassing and preserving assets of the estate, and she must refrain from fraudulent or abusive use of her discretion. *Coffee v. Ruffin*, 44 Tenn. 487, 517 (Tenn. 1867). An executrix's obligations in handling the estate are as follows:

> In the custody, management, and disposition of the estate committed to the charge of a personal representative, that person is bound to demonstrate good faith and to exercise that degree of diligence, prudence, and caution which a reasonably prudent, diligent, and conscientious business person would employ in the management of their own affairs of a similar nature.

*In re Estate of Inman*, 588 S.W.2d 763, 767 (Tenn. Ct. App. 1979) (quoting <u>Pritchard on Wills and Administration of Estates</u>, § 695 (3d ed 1955)); **McFarlin v. McFarlin**, 785 S.W.2d 367, 369-70 (Tenn. Ct. App. 1989).

In this case, the trial court determined in its Conclusions of Law that Ms. Wood acted in good faith. Further, the court went on to note that Ms. Wood acted so as to attempt to further the business practices in Revelation in a manner which would eventually profit the estate. The trial court noted, "Had Linda, when she became Executrix, ceased the involvement of the Estate with Revelation and Lowery Riggan Co., she would have effectively ignored [cancelled] the existence of a one million dollar plus loan from Mr. Riggan to Revelation, and stock interests in Revelation and Lowery Riggan Co., which were substantial assets of the Estate." It is, therefore, implicit in the conclusions of law that the trial court determined that Ms. Wood acted with reasonable prudence in addition to acting in good faith. The will of the deceased vested the Executrix with broad and expansive powers and expressly authorized the retention by the Executrix of investments in the estate since its inception, even if the investments were not of the character prescribed by law for the investments of trust assets. In this case, of course, the large assets of the estate were the investment in Revelation and Lowery Riggan Company. Ms. Wood testified that she was trying to recoup what she could from the original investment to save the company. Whether she is or was successful in such an endeavor is not revealed in this record; but, she certainly was entitled under the will to employ the agents and attorneys necessary to achieve the result which would be in the best interest of the beneficiaries. The intent of the deceased is illustrated by the paragraph of his will which exonerates the fiduciary from any liability to the beneficiaries upon obtaining the written consent of the living beneficiaries. The paragraph specifically states that there is no requirement of written consent, nor is a lack of written consent considered as evidence to establish "a lack of good faith, negligence or liability on the part of the fiduciary." The trial court found that this was a very complicated estate that required great care and diligence on the part of the Executrix. The Executrix testified that she was trying to fulfill Mr. Riggan's wishes to handle his assets as he would have, and she was guided by his investments made in the subject company during his lifetime. She testified that she acted in an attempt to protect the estate's investments and to accomplish what Mr. Riggan had envisioned. The trial court did not find that she had acted negligently in her administration of the estate.

It is established that the accounting was approved by the court, and the estate was distributed pursuant to the will. The final judgment closing the estate was not appealed, and later, this suit was filed to attack the final judgment.

In **Leach v. Cowan**, 125 Tenn. 182 (1911), this Court stated:

> The rule in this State is that a settlement in the county court in the usual course, although without notice, is *prima facie*, but may be questioned by a general bill, without the necessity of surcharging and falsifying the account. If notice if given, and a *fortiori* if the parties attend, there must be a bill of the character last mentioned before the account can be questioned; but infants who do not attend

by their guardian may question by general bill, although notified; but, if infants attend by their guardian, the same rule will apply as in case of adults. (Citations omitted).

*Id.* at 205.

In 2 Jack W. Robinson, Sr. & Jeff Mobley Pritchard on Wills and Administration of Estates § 865 (5th ed. 1994), it is stated:

> Although there was some conflict in the earlier cases concerning the weight to be given to the settlement of an executor or administrator made in the probate court when its accuracy is called in question by suit subsequently brought against him, the decisions since the Code of 1858, the Code of 1932, the 1950 Code Supplement and Tennessee Code Annotated, establish the following propositions:
>
>       \*             \*             \*
>
> (3) That if the parties are *sui juris*, and appear voluntarily, or on notice, the settlement will have the force of an account stated and settled, and can only be reopened for fraud or mistake, or under an action surcharging and falsifying it.

Ms. Lowery's allegations do not rise to the level required. The trial court found that Ms. Wood acted in good faith and, therefore, no fraud is involved. For these reasons, the trial court correctly determined that Linda's action for mismanagement of the administration did not prevail.

Ms. Lowery also argues that Wood improperly paid herself an Executrix fee and paid excessive fees to the estate attorney. Ms. Lowery argues in her brief that Ms. Wood's Executrix fee of $100,000 was not proper because it was not approved by the probate court pursuant to the Rule of Probate Court for Shelby County which require that the Executrix file a petition with the probate court to have her fee approved. The extent to which an executor should be compensated rests in the sound discretion of the court and is to be determined in view of all of the circumstances of the case. *Estate of Griffith v. Griffith*, 452 S.W.2d 895, 902 (Tenn. 1969).

In *Killinger v. Perry*, 620 S.W.2d 525 (Tenn. Ct. App. 1981), the court considered a trial court's ability to waive or abolish a local rule. The court stated:

> The Trial Court has authority to make its own rules and accordingly may waive or abolish them if it chooses. This Court will not reverse a Trial Judge for waiving a local rule absent the clearest showing of an abuse of discretion and that such waiver was the clear cause of a miscarriage of justice.

*Killinger*, 620 S.W.2d at 525. We find no abuse of discretion by the probate court in its determination to waive the requirements of the local rules and, therefore, uphold the Executrix fee.

Regarding attorney fees, these are normally allowed as administrative expenses to be paid by the estate, if the executor incurs these in good faith for the exclusive and necessary benefit of the estate. *McFarlin v. McFarlin*, 785 S.W.2d 367, 372-73 (Tenn. Ct. App. 1989). In its judgment, the trial court stated, "Linda determined, as Executrix of the Estate, that the fees charged by Attorney Rossie and the other attorneys were reasonable for services rendered and her judgment will not be challenged by this Court." Based on our review of the record in this case and the complexity of the administration of this estate, we find that the trial court was correct in upholding the attorneys fees which were paid by Linda in the administration of Mr. Riggan's estate.

While this Court agrees with the trial court that many of Ms. Wood's actions as Executrix were poor investment decisions, we find that the evidence does not preponderate against the trial court's findings that Ms. Lowery failed to carry her burden of proof to establish that Linda Wood failed to act in good faith in carrying out her duties as Executrix. Lowery argues that the trial court erred in finding that she was not entitled to reimbursement for expenses Wood paid in the maintenance and upkeep of the Houston Levee Road property and that the trial court erred in denying rental reimbursement payments to Lowery. All of these actions were taken by Ms. Wood while she was performing as Executrix of Mr. Riggan's estate. Because we find that the evidence does not preponderate against the trial court's finding that Ms. Wood acted in good faith as Executrix, we find these arguments to be without merit.

**C.     Whether the trial court erred in determining that Lowery's claims against Wood were barred by the Tennessee three-year statute of limitations**

Ms. Lowery argues that the trial court erred in determining that her claims against Ms. Wood were barred by the Tennessee three-year statute of limitations. The trial court stated in its judgment, "Because Terry did not commence her action against Linda until February 6, 2004, more than three (3) years after she signed her Receipt and Wavier in the Probate proceeding, and more than three (3) years after all of the disbursements, of which she now complains, were a matter of public record, her claims are now barred by Tennessee's three year statute of limitations."

The statute that the trial court referred to is T.C.A. § 28-3-105, which states:

> The following actions shall be commenced within three (3) years from the accruing of the cause of action:
>
> (1) Actions for injuries to personal or real property;
>
> (2) Actions for the detention or conversion of personal property; and

(3) Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability.

In her brief, Ms. Lowery argues that the applicable statute of limitations is ten years rather than three years, pursuant to T.C.A. § 28-3-110. That statute states:

The following actions are to be commenced within ten years after the cause of action is accrued:

(1)     actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds

*          *          *

(3)     all other cases not expressly provided for.

Regarding the language in the statute that speaks to "on their bonds," Ms. Lowery correctly cites the Tennessee Supreme Court's decision in Alvis v. Oglesby's Executors, 10 S.W. 313, 316 (Tenn. 1889). In that case, the court discussed the statute and stated:

But more significant still is the fact that by the Code an action against the bond of an administrator is expressly barred in 10 years. In view of this legislation, are we authorized to make a distinction between an action on the bond and one against the administrator personally for a devastavit, which is at last but a breach of legal duty embraced within the terms of the bond? It would be a most extraordinary thing if the law were as insisted, and that a suit on a bond could be met and defeated by a plea of this statute, while if the litigant were wiser, and sued the administrator personally for a breach of the very duties covered by the bond, he could escape the operation of the statute. This would be to construe the statute as operating upon the form of the action, rather than upon the cause.

*Id*. To avoid any question, the Alvis court additionally stated, "But the section under consideration is not limited .... It does not stop with barring suit upon the bond named therein; but, to cover all contingencies, the pregnant words are added: 'And all other cases not expressly provided for' ... ." *Id.*

Ms. Lowery stated in her Complaint that the suit was filed to recover funds from Ms. Wood, the Executrix of Mr. Riggan's estate, for "waste, breach of fiduciary duty and failure to act reasonably and in good faith... ." Based on the above authority, Ms. Lowery's action falls within the parameters

-15-

of the ten-year statue of limitations set forth in T.C.A. § 28-3-110, and the trial court was incorrect when it applied a three-year statute of limitations to Ms. Lowery's claim.

**D.      Whether Lowery's claims of mismanagement and bad faith are barred by the doctrine of judicial estoppel**

Ms. Lowery challenges the trial court's determination that Terry's claims of mismanagement and bad faith are barred by the doctrine of judicial estoppel.  The Appellees, Ms. Wood and Ms. Benson, argue that on July 31, 2000, Terry, under oath, waived interim and final settlements in the probate proceeding; they argue that Terry then filed her complaint in this case, complaining about the same financial details that she waived her rights to receive.  Ms. Lowery argues that her waiver in the probate court did not create an inconsistent position because the waiver did not relieve the Executrix of the obligation to file an accounting under the rules of the court and because the waiver did not relieve the Executrix of the obligation to act in good faith and in the best interest of the beneficiaries.

Pursuant to the doctrine of judicial estoppel, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by the party, at least where he had or was chargeable with full knowledge of the facts, and another will be prejudiced by this action.  ***Marcus v. Marcus***, 993 S.W.2d 596, 602 (Tenn. 1999).   Judicial estoppel is designed to prevent a party from "gaining an unfair advantage" by making inconsistent statements on the same issue in different lawsuits.  ***Id.***

In the waiver in the probate court, Ms. Lowery agreed to "waive the filing and notice thereof of interim and final settlements by the Executor and the right to enter my appearance in Court."  She made this waiver in July 2000, at which time she had been aware of the pendency of the probate proceeding for over five years.  Terry demanded a meeting with Mr. Rossie in October of 2002 to discuss the status of the Estate administration.  However, the interim accounting that outlined payments made by Linda out of the estate (of which Ms. Lowery complained in this matter) was a matter of public record since December 16, 2000.  Here, the trial court was correct in its determination that Terry was estopped from taking an inconsistent position from the one she previously assumed in the probate court when Terry had, or was chargeable with, full knowledge of the facts of the situation.

**E.      Whether Lowery is entitled to recover possession of the diamond given to her by Mr. Riggan prior to his death**

Ms. Lowery argues that she is entitled to possession of a diamond valued at $30,000 which Ms. Lowery testified was given to her by Mr. Riggan prior to his death out of her mother's estate. Ms. Lowery bases this argument solely on her testimony that after giving her the diamond and at Mr. Riggan's request, Ms. Lowery pledged the diamond as collateral on a  loan which was subsequently paid off by Mr. Riggan's estate.  However, Ms. Lowery declined to include any information about the diamond or any prayer for its return in her Complaint or Amended Complaint which she filed

in this matter. Accordingly, the trial court did not address this issue in its findings of fact, conclusions of law, or the judgment which was filed in this case. This Court cannot review issues which are not presented and ruled upon in the trial court. *Carver Plumbing v. Beck*, No. 01A01-9708-CV-00377, 1998 WL 161112, at *7 (Tenn. Ct. App. Apr. 8, 1998); *King v. Now Invs., Inc.*, 1987 WL 18891, at *2 (Tenn. Ct. App. Oct. 27, 1987).

## F.      Punitive damages

Ms. Lowery argues in her brief that Ms. Wood is liable for punitive damages in this matter. Ms. Lowery argues that because Ms. Wood allowed borrowed funds to be funneled through the Estate rather than Revelation because of fear that Revelation's account would be frozen by creditors, Ms. Lowery's actions constituted fraudulent activity.

In Tennessee, a court may award punitive damages only if it finds a defendant acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Hodges v. S.C. Toof and Co.*, 833 S.W.2d 896 (Tenn. 1992). Because we have affirmed the trial court's decision that Ms. Lowery failed to establish that Ms. Wood did not act in good faith in carrying out her duties as Executrix, punitive damages are not proper in this matter.

## G.      Whether the trial court erred in granting summary judgment in favor of First Tennessee Bank

Finally, Ms. Lowery argues that the trial court erred in granting summary judgment in favor of First Tennessee Bank in this matter. Ms. Lowery argues that the trial court was incorrect when it held in its Order Granting Motion of First Tennessee Bank National Association for Summary Judgment that (i) First Tennessee's duties as trustee of the residuary trusts began only after the Estate was closed and the assets of the residuary trusts were identified and transferred to First Tennessee in March of 2003; (ii) the language of the will is clear and unambiguous and exonerates First Tennessee fully and completely for any actions taken by Linda Riggan Wood in her capacity as Executrix; (iii) First Tennessee had no duties under the terms of the will to obtain an accounting from the estate at the time it received the residue thereof; and (iv) there is no evidence in the record of reckless indifference or willful misconduct by First Tennessee in its administration of the residuary trusts.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. See Tenn. R. Civ. P. 56.04. The moving party for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. See Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. See id. In Byrd v. Hall, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

Once it is shown by the nonmoving party that there is no genuine issue of material fact, the moving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

Id. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. See *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Because only questions of law are involved, there is no presumption of correctness regarding a trail court's grant or denial of summary judgment. *See Bain*, 926 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is de novo on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Ms. Lowery argues that the trial court was incorrect in finding that First Tennessee's duties as trustee of the Trust began only after the closure of the estate and the delivery of its residue in March 2003. Ms. Lowery argues that the bank's duties as trustee began when First Tennessee accepted its designation as trustee in May 1998, rather than when the residuary trust assets were delivered and the estate was closed.

The applicable statute which addresses when a trustee's duty to act arises is T.C.A. § 35-14-106, which states:

Within a reasonable time after accepting a trusteeship *or* receiving trust assets, a trustee shall review the trust assets and make and implement decisions concerning the retention and disposition of assets, in order to bring the trust portfolio into compliance with the purposes, terms, distribution requirements, and other circumstances of the trust, and with the requirements of this chapter.

Id. (emphasis added).

Our Supreme Court has stated that in interpreting statutes, courts are to "give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995. The courts should determine intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). Further, the rules of statutory construction direct courts not to "apply a particular interpretation to a statute if that interpretation would yield an absurd result." *State v. Sims*, 45 S.W.3d 1, 11 (Tenn. 2001).

-18-

Here, the statute states that the trustee's duty to assert control arises within a reasonable time either after accepting the trusteeship or after receiving trust assets. The legislature provided two alternatives for when this duty arises because there are situations, like in this case, in which a trustee's duties would not ensue upon accepting the trusteeship. A trustee cannot take control of and protect trust property or compel the delivery of trust property until the trustee knows exactly what assets constitute trust property. *See* T.C.A. §§ 35-15-809 and 35-15-812. Here, First Tennessee had no authority to assert any control over Mr. Riggan's assets while they were part of the probate estate, which was under the cotnrol of the Executrix and the Probate Court. Therefore, the trial court was correct in determining that First Tennessee's duty to assert control over the assets did not surface until a reasonable time after receiving trust assets, in March 2003, and correctly granted summary judgment to First Tennessee on this issue.

Ms. Lowery also argues that the trial court erred in holding in its order granting summary judgment in favor of First Tennessee that the language of the will fully exonerates First Tennessee from actions taken by the executrix. We find this argument to be without merit. Mr. Riggan's will clearly states, "I hereby exonerate fully and completely from any liability and accountability such Trustee for every act or omission of any such preceding Executor or Trustee." Further, the will provides, "Each fiduciary is hereby exonerated from any actions taken by another fiduciary in which the fiduciary did not participate." The Tennessee Uniform Trust Code clearly states that exculpatory clauses must be enforced unless they would shield a
trustee from liability for some action "committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries." T.C.A. §35-15-105(b)(8); T.C.A. § 35-15-1008(a)(1). Nothing in the record indicates that First Tennessee acted in bad faith or with reckless indifference. Therefore, the terms of the will exonerating the Trustee prevail in this case and the trial court was correct in so holding.

Ms. Lowery argues that the trial court was incorrect in finding that First Tennessee had no duty under the will to obtain an accounting at the time it received the residue of the estate. We find this argument to be without merit. Mr. Riggan's will clearly relieved First Tennessee of the obligation to obtain an accounting. The will states, "No Trustee shall be under any duty to audit the books, records or accounts of my probate estate or of any trust administered by any preceding Executor or Trustee under this Will." Further, the will provides that in the Trustee's discretion, the Trustee is authorized to "waive the necessity of any notice for, or any filing of, an inventory, accounting or settlement, whether final or otherwise, by the Executor." The Tennessee Uniform Trust Code provides that the duties of a trustee may be modified in a will, except for the duty to act "in accordance with the purposes of the trust." T.C.A. § 35-15-105(b). When such a modification occurs, the terms of the trust prevail. *Id.* Therefore, the trial court was correct in holding that First Tennessee had no duty under the will to obtain an accounting at the time it received the residue of the estate.

Ms. Lowery also argues that the trial court erred in finding that there was no evidence in the record of reckless indifference or willful misconduct by First Tennessee in its administration of the residuary trusts. However, we find this issue to also be without merit. Ms. Lowery relies on

allegations, rather than evidence proving her assertions. T.C.A. § 35-15-804 provides that "a trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." *Id.* There is nothing in the record to indicate that First Tennessee acted either unreasonably or with reckless indifference in carrying out its duties as trustee. Therefore, the trial court was correct in holding that there is no such evidence in the record.

Finally, Ms. Lowery argues in her brief that there are genuine issues involving material facts to this case. However, all of the facts that Ms. Lowery claims to be in dispute are actually not disputed by First Tennessee Bank. Notably, during oral argument for First Tennessee's Motion for Summary Judgment, Ms. Lowery's counsel conceded that the question of when First Tennessee's duties began was a matter of law. The only questions before the trial court were matters of law, making summary judgment appropriate in this matter.

## IV.    Conclusion

We find that the trial court was incorrect in determining that Ms. Lowery's claims were barred by the statute of limitations in this matter, but because of our rulings on the other issues, we affirm the judgment of the trial court. Costs of this appeal are assessed against the Appellant, Terry Riggan Lowery, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.