FILED
09/23/2020
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 3, 2020 Session

## SHAWN THACKER, ET AL. v. SHEILA MARIE WILBANKS

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCD18-28      Laurence M. McMillan, Jr., Judge**

---

## No. M2019-02031-COA-R3-CV

---

Two children and two individuals who are neither biological nor adopted children of an intestate decedent contend that they are entitled to the decedent's life insurance proceeds based on an alleged breach of contract between them and the decedent's ex-girlfriend, who was the life insurance policy's named beneficiary. The trial court found that the alleged contract failed for lack of consideration. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.

B. Nathan Hunt and Catherine W. Cheney, Clarksville, Tennessee, for the appellants, Shawn Thacker, Shanon Keele, Travis Eads, and Tiffany Sutton.

Raymond F. Runyon, Clarksville, Tennessee, for the appellee, Sheila Marie Wilbanks.

## OPINION

### I.      BACKGROUND

Terry Eads ("Decedent") died intestate and unmarried on April 23, 2018. Decedent was survived by two grandchildren[1] and four children, two of whom are Appellants Travis Eads and Tiffany Sutton. The other two Appellants, Shawn Thacker and Shanon Keele, are neither the biological nor adopted children of Decedent, but they

---

[1] Decedent had a daughter who died before he did and who is survived by two children. Decedent's grandchildren are not parties to this litigation.

considered him a father figure.  Decedent and Appellee Sheila Wilbanks shared a bank account and lived together from 2014 to 2018.  In 2012, Ms. Wilbanks and Decedent designated each other as the beneficiary of their respective life insurance policies.  Ms. Wilbanks maintains, at that time, Decedent told her that his death benefit under the life insurance policy was $150,000.  Ms. Wilbanks moved to Clarksville, Tennessee on March 31, 2018, to take care of her elderly father.  When Decedent passed away less than one month later, Ms. Wilbanks was still the beneficiary of Decedent's life insurance policy with Securian Life Insurance Company.

There were some emotionally-charged discussions between Appellant Thacker, his wife, and Ms. Wilbanks about the lack of money to bury Decedent and another money matter, the details of which are irrelevant to this appeal.  Following these exchanges, Ms. Wilbanks said she would give to the Appellants Decedent's life insurance proceeds, which she believed to be $150,000.  Appellant Thacker's attorney in Indiana prepared a document entitled "Assignment of Life Insurance Proceeds to Shawn Thacker, Travis Eads, Tiffany Sutton, Shanon Keele" ("the alleged contract").  The alleged contract read as follows:

> For value received, I hereby assign and transfer to Shawn Thacker, Travis Eads, Tiffany Sutton, and Shanon Keele, equally, share and share alike, the Securian Insurance Co. Life Insurance Proceeds (Policy #_____) on the life of Terry Eads, which may be or is due me as beneficiary after application of the assignment of Eleven thousand four hundred eighty-seven dollars and forty cents, ($11,487.40) to Keepes Funeral Home.

> I hereby instruct and authorize the Securian Insurance Co. to pay over to Shawn Thacker, Travis Eads, Tiffany Sutton, and Shanon Keele, the remaining balance of the life insurance proceeds after application of the assignment of [$11,487.40] to Keepes Funeral Home.[2]

> By making this assignment I am not liable for any estate, inheritance taxes, or other taxation which may be due from receipt of life insurance.

On May 10, 2018, Ms. Wilbanks signed the alleged contract before a notary public.  On June 29, 2018, Ms. Wilbanks emailed Appellant Thacker's attorney to state that Appellant Thacker approved of her keeping a certain amount of the life insurance proceeds to pay off her vehicle loan.  In the email, Ms. Wilbanks requested "a new form drawn up stating that I'm allowed to pay my vehicle off with the Life Insurance Proceeds and the rest will be set up for all 4 kids."  The attorney did not respond and the alleged

_____

[2] The record does not indicate that Securian Life Insurance Company was ever made aware of the alleged contract or any intended assignment of Decedent's death benefits.

contract was not modified. Later that day, Ms. Wilbanks received the Decedent's death benefits from the life insurance policy in the form of a check for $114,199.89 and a check for $227,398.03 payable to her. Ms. Wilbanks deposited these proceeds into her bank account.

On July 16, 2018, Ms. Wilbanks mailed each of the four Appellants checks in the amount of $37,500, totaling $150,000. Ms. Wilbanks paid Keepes funeral home $11,487.40 and paid off her vehicle loan in the amount of $17,745.83.

On August 21, 2018, Appellants filed their operative amended complaint[3] against Ms. Wilbanks, alleging breach of contract, unjust enrichment, and detrimental reliance.[4] On September 7, 2018, the trial court entered an *ex parte* restraining order enjoining Ms. Wilbanks from spending any of the life insurance proceeds. In her answer, Ms. Wilbanks asserted the affirmative defenses of vagueness, lack of consideration, and duress. The case proceeded through discovery.

In his deposition testimony, Appellant Thacker stated that he did not know the value of Decedent's life insurance policy, that Ms. Wilbanks never told him what it was worth, and that he learned the amount of Decedent's death benefit after filing the lawsuit against Ms. Wilbanks. When questioned further, he testified as follows:

Q. Okay. Why would you file a lawsuit if you did not know the value of the policy?

A. Because she had agreed to turn over the policy—the complete policy and not just the part that she wanted to.

Q. Okay. So she didn't know the value of that policy either, did she?

A. I can't answer that question.

Q. Did she ever tell you the value of the policy?

A. No.

Q. It's certainly not written in the agreement is it?

---

[3] Paragraph 7 of the original complaint alleges that Decedent "was survived by four (4) children who are the [Appellants] herein." The trial court found that this statement was not true.

[4] By the time of trial, the Appellants agreed to forgo their claim for detrimental reliance.

A. No.

. . .

Q. Okay. When you look at this agreement, what is it that [Ms. Wilbanks] received in exchange for giving you this money?

A. There's nothing on this agreement. . . . When we first talked about this—or not this, but everything in general, she told us—or told me—told my wife she didn't want any of it. She said that us four kids should have it, not her.

Q. She was going to make a gift to you?

A. She was, yes.

When deposed, Appellant Keele testified that she did not know the amount of Decedent's death benefit, that she received $37,500 from Ms. Wilbanks in exchange for which she "didn't give [Ms. Wilbanks] anything."

While recounting a conversation with Ms. Wilbanks about the proceeds of Decedent's life insurance policy, Appellant Eads testified, "I actually didn't believe that I was going to receive that check. I thought that it was probably just a hoax, somebody saying that you're going to get something but you don't. I really didn't know how much I would receive if I would receive any." In his deposition, Appellant Eads recalled that around the "beginning of May [2018,] [m]aybe end of April [2018] when we were cleaning out [Decedent's] house, I found some papers and stuff in there, started doing a little bit of homework," and ascertained that the Decedent's life insurance policy was worth "more than $150,000." He further testified that he shared this information with the other three Appellants and that, at the time the alleged contract was drafted, he believed the death benefit "was between 4-and $500,000." Appellant Eads stated that he never heard how much the life insurance policy was worth from Ms. Wilbanks herself.

Appellant Sutton testified similarly in her deposition:

Q. How much life insurance did you think your father had at his death?

A. . . . And he told me his was maxed out, and he said his was almost at $500,000.

. . .

- 4 -

Q. Did you ever tell Ms. Wilbanks the amount of the policy?

A. No, I did not.

Q. Did she ever tell you?

A. No. I mean, she probably lied if she did tell me.

. . .

Q. Did you give Ms. Wilbanks anything of value in exchange for her agreement to give you the life insurance?

A. Not myself, no.

On September 28, 2018, the trial court held a hearing on the restraining order against Ms. Wilbanks' use of the life insurance proceeds. During that hearing, Appellant Thacker testified as follows:

Q. Now, sir, the [alleged contract] says that for value received Ms. Wilbanks was going to transfer certain money. What value did you give her?

A. She is the one that approached me and said she was the beneficiary and she was giving [the proceeds] to us four kids because that's what my dad wanted.

Q. She said she was going to make a gift to you?

A. She said she was giving us everything.

Q. What did you give to her?

A. She took a savings account. She said she would sign off on everything if we gave her the savings account.

. . .

Q. Did she know the amount of the life insurance?

A. No she did not.

The case proceeded to trial. The Appellants all testified that they sought to win the remaining balance of Decedent's death benefit, less the amount Ms. Wilbanks paid to the funeral home, the amount she used to pay her car loan, and, of course, the $150,000 that Ms. Wilbanks already paid them. At trial, Appellant Thacker clarified that the "savings account" referenced in his prior testimony, above, was Decedent's Unify Financial Credit Union account that was payable on death to Ms. Wilbanks. Appellant Thacker confirmed that neither he nor the other three Appellants did anything to aid Ms. Wilbanks in receiving the funds in the Unify account to which she was payable on Decedent's death. The Appellants' trial testimony contradicted Appellant Thacker's prior hearing testimony and established that Ms. Wilbanks was not "given" the Unify account funds in exchange for assigning Decedent's life insurance proceeds to the Appellants. Additionally, Appellant Thacker confirmed, in contradiction to his deposition testimony, that at the time the alleged contract was drafted, the speculation amongst the four Appellants was that Decedent's death benefit was "about half a million dollars." Appellant Sutton confirmed that the $500,000 figure "was an estimated guess" of Decedent's death benefit. Throughout the proceedings, Ms. Wilbanks testified that, until she received the proceeds, she thought the Decedent's death benefit under the life insurance policy at issue was only $150,000.

By order entered October 23, 2019, the trial court found that Ms. Wilbanks, by signing the alleged contract, intended to gift to Appellants $150,000, which she did, and further found that there was no intent to gift any more money to them. The trial court concluded that Ms. Wilbanks received no consideration for the alleged contract, so the Appellants' "attempt to recover upon it must fail for lack of consideration." This appeal followed.

## II.     ISSUES

Appellants present two issues for our review: (1) Whether the trial court erred by finding that the life insurance assignment contract between the parties failed for lack of consideration; and (2) Whether the trial court erred by finding that Ms. Wilbanks did not make a gift to the Appellants for the balance of the life insurance proceeds.

## III.     STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.

2000).  This presumption of correctness applies only to findings of fact and not to conclusions of law.  *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness.  *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

## IV.    DISCUSSION

### (1)

The determination of whether an enforceable contract has been formed is a question of law.  *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009).  To be enforceable, "[a] contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)); *see also T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 865 (Tenn. Ct. App. 2002).

Consideration "exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do." *GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 188 (Tenn. Ct. App. 2010) (quoting *Brown Oil Co. v. Johnson*, 689 S.W.2d 149, 151 (Tenn. 1985)). Tennessee law creates a rebuttable presumption that all contracts in writing signed by the party to be bound are "prima facie evidence of a consideration."  *See* Tenn. Code Ann. § 47-50-103; *Cumberland Properties, LLC v. Ravenwood Club, Inc.*, 2011 WL 1303375 at *10 (Tenn. Ct. App. 2011).  The burden of proof to overcome the presumption of consideration is upon the party asserting the lack of consideration.  *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991).

In this case, there was no meeting of the minds in mutual assent to the terms of the alleged contract.  The alleged contract itself did not identify any life insurance policy number(s) or specify the amount of the death benefit that was to be assigned from Ms. Wilbanks, the beneficiary, to the Appellants.   The testimony throughout these proceedings establishes that the Appellants and Ms. Wilbanks had significantly differing ideas as to the amount of Decedent's death benefit that Ms. Wilbanks would give the

Appellants. As the trial court found, Ms. Wilbanks testified consistently that she believed the benefit payable to her on Decedent's death was $150,000, which was the full amount she intended to give to the Appellants based on the understanding between them. We find that there was no meeting of the minds of all parties such that the alleged contract signed on May 10, 2018 was enforceable.

Furthermore, the deposition and trial testimony of all parties illustrates that there was no consideration given to Ms. Wilbanks in exchange for her promise to provide "the remaining balance of the life insurance proceeds," as stated in the alleged contract, after her payment of Decedent's funeral expenses. By his own testimony, Appellant Thacker admitted that Ms. Wilbanks made a gift rather than a bargained for exchange. In their brief, Appellants point out that, after the alleged contract was signed, Ms. Wilbanks was "permitted to" use a portion of Decedent's death benefit, which Appellants do not seek to recover, to pay her vehicle loan. Thus, Ms. Wilbanks "clearly received a benefit from the contract, which constitutes sufficient consideration to support the validity of the contract at issue," they argue. We disagree because "consideration must be measured at the time the parties enter into their contract." *GuestHouse Int'l*, 330 S.W.3d at 188. The Appellants' after-the-fact waiver to funds that belonged to Ms. Wilbanks in the first place does not constitute consideration. We find as a matter of law that the alleged contract between Ms. Wilbanks and Appellants was not supported by adequate consideration and, accordingly, affirm the trial court's finding on this issue.

Appellants also argue that this court should apply "the spirit and purpose" of the family compromise doctrine to enforce the contract at issue. They rely on the following language from *Wood v. Lowery*, 238 S.W.3d 747, 757 (Tenn. Ct. App. 2007), a case involving an estate:

> In cases relating to the adjustment of family disputes where the motive is to preserve the honor or peace of the family . . . the courts will not closely scrutinize the consideration or look into the merits of the dispute where all is fair and aboveboard. The courts will decree performance of all reasonable settlements if possible, even though they may, at times, rest on grounds which would not have been satisfactory if the transaction had occurred between mere strangers, subject, however, to a proper regard for the principles that govern the courts in the specific enforcement of compromise agreements where this form of remedy is sought.

*Id*. (quoting *Williams v. Jones*, 388 S.W.2d 665, 672 (Tenn. Ct. App. 1963)). Although Appellants admit that they are not kin to Ms. Wilbanks, and gloss over the fact that all four of them are not legal relatives, they argue that they are not "mere strangers," either. *Id*. We find that the family compromise doctrine does not apply to this case because this

dispute is not between family members and does not involve estate assets. There was no estate opened for Decedent and Appellants do not represent all of Decedent's heirs.

B.

Alternatively, Appellants argue that to the extent this court finds the alleged contract unenforceable and that Ms. Wilbanks made a gift to Appellants, her "words and actions show a clear intent to divest herself of any interest in the life insurance proceeds," not just $150,000.

An inter vivos gift is "a gift of personal property made during the donor's lifetime and delivered to the donee with the intention of irrevocably surrendering control over the property." *Black's Law Dictionary* (11th ed. 2019). A person contending an inter vivos gift was made to him or her must prove (1) the donor intended to make the gift and (2) the donor delivered the gift to the donee. *Pamplin v. Satterfield*, 265 S.W.2d 886, 888 (Tenn. 1954); *see also Arnoult v. Griffin*, 490 S.W.2d 701, 710 (Tenn. Ct. App. 1972) (citing *Dodson v. Matthews*, 117 S.W.2d 969, 972 (Tenn. Ct. App. 1937)). The donor's intent "is to be determined from all the circumstances." *Arnoult*, 490 S.W.2d at 710. To establish the delivery component, the donee must prove that the donor surrendered "complete dominion and control of the gift." *Pamplin*, 265 S.W.2d at 888.

Appellants contend that Ms. Wilbanks' email to Appellant Thacker's attorney stating ". . . I'm allowed to pay my vehicle off with the Life Insurance Proceeds and the rest will be set up for all 4 kids" proves "a clear intent to divest herself of the remaining life insurance proceeds." We disagree. In this case, the only consistent testimony was that of Ms. Wilbanks. Her testimony preponderates in favor of the trial court's finding that she believed Decedent's death benefit, payable to her as beneficiary, was only $150,000. Despite their speculation that Decedent's death benefit was "about half a million dollars," none of the Appellants mentioned this to Ms. Wilbanks. The action of mailing each of the four Appellants a check for $37,500 also shows that Ms. Wilbanks did not intend to make a gift above $150,000. Additionally, Appellants cannot show that Ms. Wilbanks "delivered" any amount above $150,000 to them. Instead, she retained "dominion and control" over the remaining funds. *Id.* For these reasons, we affirm the trial court's finding that Ms. Wilbanks intended to gift $150,000 to Appellants and that there was no intent to gift any more. We find no error in the trial court's decision and, accordingly, affirm.

## V.    CONCLUSION

We affirm the judgment of the Chancery Court.  The case is remanded for such further proceedings as may be necessary and consistent with this opinion.  Costs of the appeal are taxed to the appellants, Shawn Thacker, Shanon Keele, Travis Eads, and Tiffany Sutton.

_____
JOHN W. McCLARTY, JUDGE