HARRY JAMES ALEXANDER, Appellee, v.
DOROTHY J. RHODES et al., Appellants.
—474 S.W.2d 655.

Western Section. February 15, 1971.

Certiorari Denied by Supreme Court October 18, 1971.

John M. Heiskell, Donald W. Pemberton, John Parker Hills, Memphis, for appellants.

Taylor & Taylor, Caruthers Ewing, John T. Dwyer, Memphis, for appellee.

NEARN, J. This is a case of first impression. Able Briefs have been filed and lucid argument made by both sides to this controversy.

Although more than one Assignment of Error has been made, the basic question determinative of the case is as follows:

"Can a testator in his will require that a beneficiary under his will, who has no claim on the estate absent the will, dismiss litigation pending against the testator as a condition precedent to receiving a bequest or devise under the will, it being specifically provided in the will that—'This election to take under this will, or to pursue the pending litigation, shall be made and implemented within thirty (30) days of the admission of this will to probate—.'"

The learned Chancellor answered the question in the negative.

While the parties disagree as to the correctness of the Chancellor's holding, the complainant-appellee agrees that the defendant-appellants have fairly stated the facts of the case in their Brief. Therefore, the agreed facts of the matter are as follows:

"This is a suit to construe the will of Charles T. Rhodes and the original bill was filed by the complainant, Harry James Alexander, hereinafter Alexander, against Union Planters National Bank, executor of the

will of Charles T. Rhodes, hereinafter Bank, and the individual beneficiaries under the will of Charles T. Rhodes, deceased, hereinafter Rhodes.

Alexander is the son of Elizabeth Leclaire Alexander Rhodes, hereinafter Elizabeth, the deceased wife of Rhodes, by a previous marriage to Spero James Alexander.

Elizabeth predeceased Rhodes, she having died on March 28, 1964, as the result of carbon monoxide poisoning from a fire in the Rhodes' home.

Prior to her death Elizabeth executed a deed of conveyance dated August 30, 1963, she creating a tenancy by the entireties with her husband Rhodes in certain real estate which, prior to that conveyance was her sole property. The real estate which was the subject of this conveyance came to Elizabeth under the will of John J. Donnelly.

At her death Elizabeth left a paper writing dated August 15, 1963, which purported to be testamentary in character by which she left her entire estate to Rhodes.

Rhodes died September 18, 1964, as the result of a self-inflicted gunshot wound. Prior to his death Rhodes had been sick for some time with cancer.

At his death Rhodes left a will dated August 10, 1964, nominating Bank as Executor, which was by order of the Probate Court of Shelby County admitted to probate in solemn form on December 16, 1964.

It is this will [Rhodes'] of which a construction is sought in this litigation, particularly that portion of the will which reads as follows:

"After the proceeds from the sale of these properties have been first used to defray all debts and expenses of my estate, then I direct my Executor to make the following distribution of the remaining proceeds:

1) One-half (½) of the remaining proceeds, including any accumulated income, I give, devise and bequeath to HARRY JAMES ALEXANDER, the son of my deceased wife, ELIZABETH L. RHODES, if he survives me, conditioned, however, on the following:

(a) That he cause to be dismissed all lawsuits which he has filed against me, or the Estate of Elizabeth L. Rhodes, and specifically cause No. 66810-3 pending in the Chancery Court of Shelby County, Tennessee, cause No. 28410 T.D. pending in the Circuit Court of Shelby County, Tennessee, and cause No. 28119 T.D. pending in the Circuit Court of Shelby County, Tennessee, with prejudice, or in such manner that none of these actions can be reinstituted against my estate or personal representative. This election to take under this will, or to pursue the pending litigation, shall be made and implemented within thirty (30) days of the admission of this will to probate.

(b) That he should not contest this will or disturb my Executor and Trustee by suit or otherwise in the

lawful exercise of their authority, and should he do so he thereby forfeits his share in my estate.'

Answers having been filed by those defendants who have appealed, the matter was originally heard on oral testimony before the Chancellor without the intervention of a jury on April 18, 1966, and after the hearing of witnesses it was taken under advisement by the Court. Thereafter, on June 23, 1969, the matter came on to be further heard at which time certain stipulations, written and oral, with regard to admission of evidence were made by the solicitors and permitted by the Court.

Thereafter the Court on February 26, 1970, filed its Memorandum Opinion, and, after denying defendants motion for additional findings entered its final decree by which it was adjudicated that, '—the Court is of the opinion, and finds, that the conditions in the will of Charles T. Rhodes attempting a forfeiture of the one-half of the remainder of the estate left to Harry James Alexander were designed to shut the door on the ascertainment of truth and prevent the observance of law and that under all the facts and circumstances of this case it was offensive to the public policy of the State of Tennessee and that, consequently, the failure of the Complainant to meet the conditions does not work a forfeiture of any devise of bequest made to the Complainant, Harry James Alexander, under the will of Charles T. Rhodes.'

Defendants prayed and were granted an appeal to this Court of Appeals which they have perfected by making bond and presenting, having authenticated and

filed within the time prescribed, their bill of exceptions.''

However, for a clearer understanding of this matter, the foregoing must be supplemented by additional uncontroverted facts. The litigation, dismissal of which was required by the testator, consisted of three suits pending against the testator at the time of the execution of the will. The first suit was over the validity of the will of Elizabeth, whereby her property was devised to defendant Rhodes. The will had been probated in solemn form and transferred to the Circuit Court for a trial on the issue of *devisavit vel non*. The second suit originated in the Circuit Court, whereby Alexander sought damages from Rhodes for the wrongful death of Elizabeth. The third suit likewise brought by Alexander was pending in the Chancery Court to set aside a deed by Elizabeth to Rhodes, which deed created a tenancy by the entirety between Elizabeth and Rhodes in property which was solely owned by Elizabeth prior to her marriage to Rhodes. After Rhodes took his own life and his will was probated, the Bank notified Alexander of the terms of the Rhodes will and advised Alexander that, unless the terms of the will were adhered to, the Bank, as Executor, would not pay over to Alexander his share of Rhodes' estate. Alexander, on advice of counsel and his own advice, continued with all litigation until each suit had reached unfavorable determination so far as Alexander was concerned. It is admitted that the condition precedent was not complied with by Alexander.

Before discussing the authorities, three important facts must be realized and they are: (a) the instant case is not a will contest but is to construe the will of Rhodes,

(b) Alexander is not an heir of Rhodes and would not take if Rhodes had died intestate, and (c) the will that was contested was the will of Elizabeth and not the one of Rhodes, which Rhodes will is the subject of this litigation. The very absence of these facts renders the question posed as novel and one of first impression. Needless to say, neither counsel nor this Court are able to find authorities which contain the same peculiar factual situation of this case.

The Chancellor, in his Memorandum Opinion, relied upon the authority, among others, of Tate v. Camp, 147 Tenn. 137, 245 S.W. 839, 26 A.L.R. 755. The appellee also relies upon the Tate case, as well as those later cases which follow it, for the proposition that the stated condition in the Rhodes will is not valid as same is against public policy.

In the Tate case, the will contained a forfeiture clause in the event of contest. Camp, testator's son, sought to contest the will on the grounds that same was obtained by the fraud or undue influence of other beneficiaries. The Supreme Court made exhaustive study of authorities from other jurisdictions and adopted the rule that a forfeiture clause in the will of the testator shall not apply to those who bring a contest of that will in good faith and with probable cause. It is evident from the Court's entire Opinion that the paramount aim of any Court should be to seek the true intent of the testator. Those who, with probable cause and in good faith, seek to do this by contesting the will should not be penalized thereby. However, this reasonable and proper rule does not lend itself to the facts of this case. It is the uncontested will of Rhodes which contains the forfeiture clause and

it is uncontradicted and admitted that the will exactly expresses the will and intent of the testator. In the instant case no one seeks to assist the Court in finding the true intent of Rhodes. It is the forfeiture clause only in Rhodes' will that is attacked and sought to be construed. Elizabeth's will was the subject of other litigation and is not herein contested.

The paramount and controlling law in the administration of wills is that the intention of the testator be carried out. National Bank of Commerce v. Greenberg, et al., 195 Tenn. 217, 258 S.W.2d 765, and there can be no doubt in the case now before us that the testator's intent has been thwarted by the decree below, but on the theory that this particular forfeiture clause violates public policy. Argument is made that Rhodes, by placing the offer and the forfeiture provision in his will, sought to cover up his own misdeeds, hide the truth and prevent the observance of the law which would render the clause contrary to the public policy of this state and bring this case within the scope of the *Tate* decision, supra. However, this argument will not bear close scrutiny for a close examination of the Tate case reveals other significant facts. In the Tate case, though the son brought his father's will to the Circuit Court on the issue of *divisavit vel non*, the matter was not tried. Instead, the son and the other beneficiaries reached a compromise whereby a greater portion of the estate than allocated by the will would go to the son, conditioned upon dismissal on the Circuit Court action and the allowance of the will to be probated uncontested in solemn form. Based on this compromise, the will contest suit was dismissed. Tate was the Executor of the will and he brought the action in the Chancery Court to construe the meaning of the

forfeiture provision of the contested will, in light of the withdrawn contest of the will, and to ascertain whether or not the son had forfeited his interest under said will. The Supreme Court held that the forfeiture clause was a valid provision and that the terms thereof were violated but, because of the existence of probable cause and the good faith of the son in attempting to show the true intent of the testator in whose will the forfeiture clause existed, the son had not forfeited his interest under said will. The facts of the will contest never came to light as they were suppressed by the compromise. The Supreme Court, it appears, was not of the opinion that the compromise of the will contest suit was "designed to shut the door on the ascertainment of truth and prevent the observance of law" so as to render the compromise violative of public policy; for, even though not called upon to rule upon the compromise, the Court was aware, by stipulation of the parties, of the compromise and its terms as the Court commented on same.

■ The instant suit for construction of the will was not brought to aid the Court in ascertaining the true intent of Rhodes. His intent is clear and admitted. The Rhodes will is not contested on any grounds of lack of the testator's mental capacity. It must be admitted that had Rhodes died intestate this suit would not be before this Court, as his estate would have by operation of law passed to his heirs, and Alexander does not fall in the category of an heir. In short, Rhodes legally owed Alexander nothing. However, Rhodes did make his will. By its terms, it is a clear offer to settle pending litigation on the basis of half-a-loaf or none. The litigation proposed to be settled by the terms of Rhodes' will was similar to that which was settled in the *Tate* case, and

such settlement of litigation was approved by implication by the Supreme Court. Of necessity, all cases which are settled prior to trial involve the "hiding" of certain facts as they never reach public view. Settlements of litigation are not contrary to the public policy of this state. In fact, they are to be encouraged. Clement v. State for use of Scott, 2 Tenn.Cas. (Shannon) 251; Third National Bank v. Scribner, 212 Tenn. 400, 470 S.W.2d 482; Emmco Ins. v. Beacon Mut. Ind., 204 Tenn. 540, 322 S.W.2d 226.

■ At the time Rhodes made his will, Alexander was in the process of contesting the will of his (Alexander's) mother; was suing his stepfather, Rhodes, for his mother's wrongful death, and was attempting to set aside the deed of his mother to his stepfather. In the light of all of this, Rhodes, by will, attempted to make settlement of the disputes. If not in fact, this offer by Rhodes' will was, in effect, an attempt to cause a family compromise and such type of compromise has always been looked upon with favor by the Courts. Williams v. Jones (1963) 54 Tenn.App. 189, 388 S.W.2d 665; First National Bank v. Union Ry. Co. (1926) 153 Tenn. 386, 284 S.W. 363; Williams v. Sneed, 43 Tenn. 533, 3 Cold. 533. No doubt this view has been taken on the theory that a family in particular, and society in general, has little to gain by the public viewing of family grievances or disputes. If a compromise is not contrary to public policy, it must follow that an offer to compromise is not contrary to the public policy of this state.

■ ■ Therefore, we hold that the subject provision of the Rhodes will is not void as contrary to public policy. To hold to the contrary would open the door to ceaseless relitigation of matters in which offers of settlement were

rejected, or which were compromised, settled, and dismissed. It is clear to this Court, under the holding of the *Tate* case, that Alexander, and Rhodes during his lifetime, had they been so inclined, could have legally settled their controversy by an agreed division of Elizabeth's estate or in some other agreed manner without violating public policy of this state. If it could be done while living, we see no lawful reason why an offer to settle cannot be made by will. Had Alexander agreed to dismiss the three suits based upon Rhodes' promise to leave Alexander a portion of the estate by his will, and had Rhodes failed to so devise the estate, we think it highly improbable that a Court would fail to enforce that agreement as violative of public policy.

It is inescapable that Alexander was aware of the provisions of Rhodes' will, having been so advised by the Executor, and with this knowledge continued to prosecute the pending litigation. This election was made with full knowledge. Since the forfeiture clause is not contrary to public policy, Alexander cannot now be heard to complain.

As we view this matter, the issues of probable cause and the good faith of Alexander are not germane to the issues of this case as presented by the facts. These issues would only apply in the instant case if it were a question of probable cause and good faith in *contesting* the will of Rhodes wherein the forfeiture clause is found. The will of Rhodes has never been contested in an attempt to ascertain the true intent of the testator and in fact could not be contested by Alexander as he is not an heir. Bowers v. McGavock (1904) 114 Tenn. 438, 85 S.W. 893;

Winters v. American Trust Co. (1929) 158 Tenn. 479, 14 S.W.2d 740.

Furthermore, we think such forfeiture provision was not unreasonable. Rhodes, at the time of the execution of his will, was certainly no stranger to litigation and no doubt was aware, as we all are, that litigation can be and usually is time consuming and expensive. It is evident that he sought by the offer to prevent the estate from being depleted if not consumed by the necessary expenses of such litigation.

If we are in error in the foregoing, which we do not believe, there is yet an additional reason for reversal. We have treated this matter as if it were as styled, that is, an "Original Bill to Construe the Will of Charles T. Rhodes, Deceased". But, is its object that which it claims? We think not. The prayer of the bill seeks to declare the complained of portion of the will void as violative of public policy. To declare void is not the same as to construe. The pleadings and proof admit that there is nothing ambiguous, unclear or doubtful concerning the verbiage of the will. The bill seeks to have the clear verbiage of a portion of the will declared void. In effect, Alexander seeks to contest a portion of the will which he cannot do. In Tate v. Camp, supra, the Court, in declaring the rule regarding such forfeiture, cited with approval for its reasoning South Norwalk Trust Co. v. St. John, 92 Conn. 168, 101 A. 961. In this lengthy quote in the *Tate* case, the following is found:

"If the action of a legatee is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary

forfeiture clause, *for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning.''* (Emphasis supplied.)

The object of the original bill in this cause is to render void a portion of Rhodes' will.

Therefore, for the reasons stated, the Assignment of Error is sustained and the decree of the Chancellor is reversed and the cause dismissed at the cost of appellee.

Matherne, J., concurs.

Carney, P.J. (dissenting).

I respectfully disagree with my learned colleagues. I think His Honor the Chancellor correctly held that the public policy announced in Tate v. Camp, 147 Tenn. 137, 245 S.W. 839, 26 A.L.R. 755, applies with equal force to the case at bar. In the Tate case the son contended that the niece had by fraud and undue influence overreached the 81-year-old father and made herself principal beneficiary under the father's will. The will of the father contained a condition that the son would forfeit his interest under the will if he contested it. The son did contest the will in violation of the condition but the case never went to trial because the niece, by compromise, gave up most of the benefits she had obtained under the will.

I understand our Tennessee Supreme Court in the Tate case to hold that the forfeiture provision was against public policy under the facts of the Tate case because the alleged perpetrator of the fraud upon the

testator might have used the forfeiture provision as a means of discouraging investigation into her evil acts, namely the alleged fraud and undue influence of the niece. In the instant case the appellee, Harry James Alexander, is the only son of his deceased mother, Elizabeth Alexander Rhodes. Elizabeth Alexander Rhodes inherited considerable property from one John J. Donnelly. Shortly thereafter the deceased, Charles T. Rhodes, an inspector of the Police Department of the City of Memphis, left his wife and five children and assumed a meretricious relationship with Elizabeth Alexander who was an alcoholic. Later he divorced his wife and married Elizabeth Alexander Rhodes in August, 1962.

Some witnesses said Mrs. Rhodes drank over a fifth of whisky per day and also used drugs. Elizabeth Rhodes signed a paper writing dated August 15, 1963, purporting to be a will leaving all of her property to her new husband, Charles T. Rhodes, to the exclusion of her only son and natural heir, the appellee Harry Alexander. On August 30, 1963, just fifteen days after the execution of the alleged will, Elizabeth Alexander Rhodes executed a deed of conveyance creating tenancy by the entireties with her husband Rhodes on certain real estate which she had inherited under the will of John J. Donnelly and this deed was withheld from registration until after the death of Elizabeth Alexander Rhodes. There is no proof of any reason why Elizabeth Alexander Rhodes would have completely disinherited her only son.

On March 28, 1964, Elizabeth Alexander Rhodes died in a drunken stupor from carbon monoxide poisoning in a fire in the Rhodes home. There were many mysterious

circumstances surrounding Mrs. Rhodes' death. Inspector Rhodes left her at home at 1:00 A.M. unattended and returned at 3:30 A.M. to find her in bed with the mattress burning. Harry Alexander had reasonable grounds to and did believe that both the will and the deed had been obtained by the deceased, Charles T. Rhodes, from his mother, Elizabeth Rhodes, as a result of fraud and undue influence practiced upon her while in a state of continued drunkenness. One of Mrs. Rhodes' bankers said the signature on the will was her "drunk" signature and that she also had a sober signature.

Harry Alexander instituted suit in the Chancery Court to set aside the deed and instituted proceedings in Circuit Court to contest the will of Elizabeth Rhodes. The money and property which Charles T. Rhodes devised or bequeathed to Harry James Alexander was the same money and property he received under the deed and will of Elizabeth Alexander Rhodes. Admittedly, under the Tate case if the forfeiture provision had been incorporated into the will of Elizabeth Rhodes, it would be held invalid because in contravention of public policy.

I see no material distinction in principle in the fact that the alleged evil doer, Charles T. Rhodes, attempted to shut the door on investigation of the circumstances of the execution of the will of Elizabeth Rhodes by a bequest with the forfeiture clause in his own will instead of a bequest with a forfeiture clause in the will of Elizabeth Rhodes. If Charles T. Rhodes had not been the alleged evil doer and alleged perpetrator of a fraud upon Elizabeth Rhodes in the execution of her will and if the prop-

erty and money by which Inspector Rhodes sought to cut off investigation into the execution of the will of Elizabeth Rhodes had not been property which Charles T. Rhodes received under the will of Elizabeth Rhodes, then I think the opinion of the majority would be correct.