IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December 13, 2012 Session

# CHERYL O. CHARLES
## v.
# GISSELLE CARTER NEELY

**Appeal from the Chancery Court of Shelby County**
**No. CH-11147211      Arnold B. Goldin, Chancellor**

**No. W2012-01252-COA-R3-CV - Filed February 27, 2013**

This case involves an alleged agreement about funds distributed from a reopened estate. The decedent father died years ago, leaving three daughters and an estranged wife. The father's estate was probated and closed. Long afterward, the petitioner daughter discovered unclaimed funds in the father's name held by the State. Another daughter, the executrix of the father's estate, reopened the father's estate. Finding no claims against the estate, the probate court distributed the funds to the executrix, in accordance with the father's will, and closed the estate. The daughter who discovered the unclaimed funds filed the instant petition in chancery court, asserting that the sisters had agreed that the funds would be split among them in accordance with their mother's will. Based on the probate court's adjudication of the father's reopened estate, the chancery court granted summary judgment in favor of the executrix daughter, holding that *res judicata* barred the chancery court action. We affirm the grant of summary judgment as to allegations in the chancery court petition that the probate court should have distributed the funds differently. We reverse the grant of summary judgment as to the remainder of the chancery court petition, finding that the petition also asserts claims based on an alleged separate oral agreement among the sisters, and hold that the respondent executrix sister has not conclusively established the defense of *res judicata* as to these remaining claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Petitioner/Appellant Cheryl O. Charles, Memphis, Tennessee, self-represented

Kathleen N. Gomes, Memphis, Tennessee for Respondent/Appellee, Gisselle Carter Neely

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

This case arises out of a family dispute.[1]  George N. Carter ("Father") died testate in September 1994.  He was survived by his wife, Evelyn Carter ("Mother").  Father was also survived by three daughters: Respondent/Appellee Gisselle Carter Neely ("Neely"); Petitioner/Appellant Cheryl O. Charles ("Charles"); and Jacquelyn Carter, who is not a party to this action.

Father's will was admitted to probate in the Probate Court of Shelby County, Tennessee in October 1994.  At the time of Father's death, he and Mother were separated; Mother was excluded from Father's will.  The will designated daughter Neely as executrix of Father's estate.  The will provided that daughters Cheryl Charles and Jacquelyn Carter would receive $2,000 each.  Neely was named as the sole beneficiary in the will's residuary clause.  The property in Father's estate was distributed in accordance with his will.  In December 1995, the Probate Court issued an order discharging Neely as executrix and closing the estate.

A couple of years later, in 1997, Mother died.  Mother's will appointed daughter Charles as executrix of her estate, and left all real and tangible property to Charles.  Under Mother's will, her residuary estate was divided into fourths, with a fourth to each of the three daughters and the remaining fourth to be divided among Mother's grandchildren.  Although Mother left a will, for reasons that do not appear in the record, no estate was opened for her.

Apparently, prior to her death, Mother received documents informing her that Father had owned several shares of FedEx stock that needed to be transferred.  The documents indicated that effectuation of the stock transfer required a "certified copy of the court appointment of the Estate Representative" within 60 days of the transfer request, as well as "a signature of

---

[1]Because this appeal arises out of a grant of summary judgment, we assume the truth of the facts asserted by the nonmovant, Charles. ***See Roberts v. Vaughn***, No. W2008-01126-COA-R3-CV, 2009 WL 1608981, at *1 n.1; 2009 Tenn. App. LEXIS 386, at *2 n.1 (Tenn. Ct. App. June 10, 2009) (citing ***Foster Bus. Park, LLC v. Winfree***, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *22; 2009 Tenn. App. LEXIS 45, at *67 (Tenn. Ct. App. Jan. 15, 2009).

the Estate Representative." The stock transfer was not completed[2] and after Mother's death the documents with the instructions were placed in a box with some of Mother's other possessions and forgotten.

Years later, in 2011, Charles happened on the FedEx stock transfer documents. According to Charles, when she discovered the stock transfer documents, she contacted FedEx and was informed that the unclaimed shares had been sold and the proceeds turned over to the State of Tennessee Treasury Department's Division of Unclaimed Property ("State"). The State confirmed to Charles that it was holding the funds in question. The State's documents listed Father's name under the "original owner's name" for the FedEx shares at issue, with no additional beneficiary. Charles claims that she was told that, in view of the amount of the funds being held by the State, the probate estate would have to be re-opened.

With this information about the FedEx stock proceeds in hand, Charles claims, she contacted her sisters, Jacquelyn Carter and executrix Neely. Charles contends that the sisters discussed opening an estate for Mother, but decided that "[M]other's estate did not warrant [a] probate filing." Charles asserts that the three sisters then decided that "since my father's will had been probated, [Neely] would file for the funds and distribute them according to [Mother's] will . . . ."

Thereafter, executrix Neely filed a petition to re-open Father's estate.[3] On June 7, 2011, the Probate Court entered an order re-opening Father's probate, for the express purpose of addressing the funds being held by the State.

The record next reflects an order entered by the Probate Court on October 4, 2011. The order states that Neely "made a diligent search for all creditors, . . . [and] provided notice to them," but "[n]o claims were filed against the Estate." The order stated further that Neely had "distributed the Estate according to the terms of [Father's will]." The order closed Father's re-opened estate and discharged Neely as executrix and personal representative. Therefore, under the will, the funds were determined to be part of Father's estate and distributed to Neely, as the residuary beneficiary under Father's will. Charles did not receive any of the funds that were distributed.

On September 8, 2011, Charles, representing herself, filed a petition against Neely in the Chancery Court of Shelby County. In the petition, Charles recited that she found the documents on the FedEx stock, learned that the proceeds from the sale of the stock were

---

[2]It appears that Mother may have initiated the stock transfer but did not complete it before her death.

[3]Neely's petition is not in the appellate record, but the Probate Court order refers to it.

being held by the State, and was informed that the funds would have to be distributed through probate. Upon learning this, the petition alleged, "I [Charles] contacted my sisters and it was decided that since my father's will had been probated, the defendant (Gisselle Neely) would file for the funds and distribute them according to my mother's will – one fourth to each of her three daughters and one fourth split between her two grandsons." The petition asserted that Charles gathered the documentation on the funds and sent it to sister Jacquelyn Carter, to be forwarded to Neely. After initially leading Charles to believe that she would receive a check with her portion of the proceeds, Charles's petition asserted, Charles was then told that Neely "decided to give the funds to charity." As relief, Charles's petition requested $7,500 as reimbursement for her work to secure the funds and "the one fourth portion of the funds as originally agreed."

In February 2012, Neely filed a motion to dismiss for failure to state a claim or for summary judgment. In the motion, Neely contended that the funds were properly distributed to her as the residual beneficiary of Father's estate. Neely noted that Father's re-opened estate was closed on October 4, 2011 pursuant to Probate Court order.

In response to Neely's motion, Charles claimed that Neely:

> . . . entered into a good faith agreement employing me to secure information and the documentation necessary to receive unclaimed funds of [Father]. It was agreed that when the funds were received, [Neely], Jacquelyn Carter and [Charles] would each receive a one third portion of the funds ($25,000) to be paid. After [Neely] received and cashed the check, she breached the contract and refused to disburse the funds. [Neely] indicated that the funds would be sent FEDEX and then informed me through text messages from my sister, Jacquelyn Carter, that she would not disburse the funds as agreed.

In reply, Neely denied Charles's allegations, and argued in the alternative that Charles lacked standing to file the petition because Charles was never formally appointed to be the personal representative for Mother's estate.

In April 2012, after considering the parties' arguments and the record as a whole, the trial court entered an order granting summary judgment in favor of Neely. The trial court held:

> 1. As a matter of law, the proceeds held by the [State] were the assets of the Estate of [Father] and, thus, properly passed to [Neely] as the residual beneficiary of his estate.

2. The matter was properly handled and resolved in the Shelby County Probate Court and, as such, *res judicata* applies, and this Court has no jurisdiction over this matter.

From this order, Charles now appeals.[4]

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Charles raises several issues, stated as follows:

Whether the [trial court] erred in granting Defendant's Motion for Summary Judgment without information provided by the discovery documents withheld by the defendant and the plaintiff's evidenti[ary] documents that were brought to the hearing for court submission and to be consider[ed].

Whether the Defendant should be sanctioned for deliberately withholding crucial evidence from the court and the Plaintiff.

Whether a default judgment should have been entered by the [trial court] due to [Neely's] failure to timely respond to two subpoenas.[5]

Whether Plaintiff should be compensated based on completion of the verbal contract and due to documents deliberately withheld by the Defendant before filing of a motion for summary judgment.

In response, Neely argues that, in this appeal, Charles has failed to comply with the Tennessee Rules of Appellate Procedure and seeks dismissal of the appeal on that basis. Neely also maintains that the trial court correctly granted summary judgment in favor of Neely. She asserts that Charles's appeal is frivolous and seeks an award of damages pursuant

---

[4]Charles filed several post-appeal motions in the trial court, none of which are relevant to this appeal.

[5]After filing her petition, Charles filed a motion for default judgment against Neely. After that, Neely filed her motion to dismiss or for summary judgment. The trial court did not explicitly address the motion for default judgment but granted summary judgment in favor of Neely. By doing so, it implicitly denied the motion for default judgment. We find no abuse of the trial court's discretion in declining to enter a default judgment. *Patterson v. SunTrust Bank*, 328 S.W.3d 505, 509 (Tenn. Ct. App. 2010); *State ex rel Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000).

to Tennessee Code Annotated § 27-1-122.  In her reply brief, Charles seeks to raise several additional issues, which we decline to address.[6]

On appeal, "[t]he scope of review of a grant or denial of a motion for summary judgment . . . involves a question of law."  *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010).  Therefore, this Court reviews the grant of summary judgment in this case *de novo* with no presumption of correctness.  *Id.*; *Jones v. Vasu*, 326 S.W.3d 577, 580 (Tenn. Ct. App. 2010).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.  The moving party has the burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." *Id.* (citing *Byrd,* 847 S.W.2d at 215 n.5). If the moving party fails to carry its burden, then the motion for summary judgment should be dismissed. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

In this case, summary judgment was granted to Neely on the basis of *res judicata*, an affirmative defense.  As such, Neely has the burden of establishing facts to support each element of the defense.  *See NationsBank of Tenn. v. JDRC Corp.*, No. 03A01-9607-CH-00226, 1997 WL 290188, at *2; 1997 Tenn. App. LEXIS 382, at *6 (citing *Byrd*, 847 S.W.2d at 215 n.5).  Only *after* Neely establishes such facts does the burden then shift to Charles to demonstrate the existence of a genuine issue of material fact.  *Hannan*, 270 S.W.3d at 5 (citing *Byrd*, 847 S.W.2d at 215).

---

[6]Under the Tennessee Rules of Appellate Procedure, Charles is entitled to file a reply brief "in reply to the brief of the appellee." Tenn. R. App. P. 27(c).  She is not, however, entitled to raise new or different issues in her reply brief, as this would give Neely no opportunity to respond to them.  *See Guth v. Suntrust Bank, Inc.*, No. E2006-00212-COA-R3-CV, 2007 WL 1135488, at *2; 2007 Tenn. App. LEXIS 221, at *4 (Tenn. Ct. App. Apr. 17, 2007).

ANALYSIS

*Compliance with Appellate Rules*

Neely argues vigorously that Charles's appeal should be dismissed for failure to comply with the Tennessee Rules of Appellate Procedure. She recites numerous deficiencies, inaccuracies and failings in Charles's appellate brief.[7]

We are mindful of the "boundar[ies] between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). "[C]ourts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Young*, 130 S.W.3d at 63 (citing *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App.1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)). This Court has on numerous occasions dismissed an appeal for failure to comply with the Rules of Appellate Procedure, especially where the deficiencies are so glaring and profound as to render effective appellate review impracticable. *See, e.g., Quaites v. University of Tennessee College of Pharmacy,* No. M2011-00923-COA-R3-CV, 2012 WL 172893, at *7 (Tenn. Ct. App. Jan. 19, 2012); *Owen v. Long Tire, LLC,* No. W2011-01227-COA-R3-CV, 2011 WL 6777014 (Tenn. Ct. App. Dec. 22, 2011); *Chiozza v. Chiozza,* 315 S.W.3d 482 (Tenn. Ct. App. 2009); *Bean v. Bean,* 40 S.W.3d 52 (Tenn. Ct. App. 2000). On other occasions, we have exercised our discretion under Rule 2 of the Tennessee Rules of Appellate Procedure and Rule 1 of the Rules of the Court of Appeals to consider the substantive issues on appeal despite the deficiencies in a party's appellate brief, or have found that the deficiencies in the appellate brief resulted only in waiver of particular issues. Tenn. R. App. P. 2; Tenn. Ct. App. R. 1(b); *see, e.g., Harvey v. Ellis,* No. M2008-01955-COA-R3-CV, 2009 WL 5173721, at *6 (Tenn. Ct. App. Dec. 29, 2009); *Austin v. Allen,* No. M2008-00414-COA-R3-CV, 2009 WL 837734, at *10 (Tenn. Ct. App. Mar. 27, 2009); *Wilson v. Battle Creek Milling & Supply Inc.,* No. M2007-02830-COA-R3-CV, 2008 WL 5330498, at *5 (Tenn. Ct. App. Dec. 19, 2008); *Ruff v. Raleigh Assembly of God Church, Inc.*, No. W2001-20578-COA-R3-CV, 2003 WL 21729442, at *5; 2003 Tenn. App. LEXIS 496, at *14 (Tenn. Ct. App. July 14, 2003).

---

[7]Neely contends that Charles's appellate brief fails to comply with the Tennessee Rules of Appellate Procedure in many ways: (1) the style on the brief's cover sheet is erroneous; (2) the Table of Authorities lists motions and subpoenas instead of statutes and cases; (3) the issues raised on appeal are generalized "blanket" issues or are otherwise inappropriate; (4) the Statement of the Case is a diatribe instead of a recitation of the proceedings in the trial court; (5)the Statement of the Facts is factually incorrect and contains no citations to the record; and (6) the Argument section of the brief contains no references to the record and does not relate to the stated Issues, and attaches as exhibits documents that are in the appellate record.

We have carefully considered Charles's appellate brief in light of Neely's argument, balancing the need to enforce the Court's rules, the fact that the case was dismissed prior to a trial, the concerns of both parties, and the interests of justice. While Charles's appellate brief is less than ideal, we find that it is not so deficient as to prejudice Neely's ability to respond to Charles's primary arguments on appeal, or our ability to conduct an effective appellate review. Therefore, we exercise our discretion and respectfully decline to dismiss the appeal for failure to comply with the appellate rules.

### *Grant of Summary Judgment*

The trial court in this case granted summary judgment to Neely on the basis of *res judicata,* finding that the matters of which Charles complained in her petition were handled by the Probate Court. We briefly review the doctrine of *res judicata* and then look at its applicability to Charles's Chancery Court petition and the record in this cause.

*Res judicata* serves to bar "a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." ***Richardson v. Tenn. Bd. of Dentistry***, 913 S.W.2d 446, 459 (Tenn. 1995); ***see also Estate of Miller v. Rice***, No. M2011-02152-COA-R3-CV, 2012 WL 3655244, at *2; 2012 Tenn. App. LEXIS 589, at *6-7 (Tenn. Ct. App. Aug. 24, 2012) (citing ***Massengill v. Scott***, 738 S.W.2d 629, 631 (Tenn. 1987)). The purpose of this doctrine is to "promote finality in litigation in order to conserve judicial resources," ***State ex rel. Cihlar v. Crawford***, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000), prevent inconsistent or contradictory judgments, and avoid undue prolongation of the litigation process. ***Sweatt v. Tenn. Dep't of Corr.***, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002); ***Shanklin v. UT Med. Group, Inc.***, No.W1999-01982-COA-R3-CV, 2000 WL 33191374, at *1; 2000 Tenn. App. LEXIS 778, at *3-4 (Tenn. Ct. App. Nov. 6, 2000).

"[R]es judicata applies not only to issues that were raised and adjudicated in the prior lawsuit, but to 'all claims and issues which were relevant and which could reasonably have been litigated in a prior action[.]' " ***Estate of Miller,*** 2012 WL 3655244, at *2; 2012 Tenn. App. LEXIS 589, at *6-7 (citing ***Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark***, 586 S.W.2d 825, 826 (Tenn. 1979)). A party asserting the affirmative defense of *res judicata* must establish that: (1) a court of competent jurisdiction rendered the underlying judgment; (2) the same parties or their privies were involved in both proceedings; (3) both proceedings involved the same cause of action; and (4) the underlying judgment was final and on the merits. ***Lee v. Hall***, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)); ***see also Graham v. Walldorf Prop. Mgmt.***, No. E2008-00837-COA-R3-CV, 2009 WL 723837, at *4; 2009 Tenn. App. LEXIS 107, at *9-10 (Tenn. Ct. App. Mar. 19, 2009).

Against this backdrop, we examine the allegations in Charles's Chancery Court petition and the pleadings and documents in the record relating to Neely's motion for summary judgment. After briefly reciting the facts outlined above, i.e., that she found Mother's documents on the FedEx stock and learned through research that the proceeds from the sale of the stock were being held by the State, Charles's petition states:

> I contacted my sisters and it was decided that since my father's will had been probated, the defendant (Gisselle Neely) would file for the funds and distribute them according to my mother's will - one fourth to each of her three daughters and one fourth split between her two grandsons.

The petition then describes Charles's efforts to secure the documents necessary for the sisters to obtain the stock proceeds, and asserts that she "sent them to my sister (Dr. Jacquelyn Carter) for review and forwarding to [Neely]." Apparently after the documents from Charles were utilized to obtain the stock proceeds, Charles alleges, "the check was received and cleared by [Neely]. . . ." The petition alleges that, after first being told that she "would receive a check in a FEDEX package," Charles was informed that Neely "decided to give the funds to charity." The petition seeks reimbursement for Charles's efforts to get the documents to obtain the stock proceeds and "payment of the one fourth portion of the funds as originally agreed." Attached to the petition are various documents related to Charles's efforts to get information on the stock proceeds.

In response to Neely's summary judgment motion, Charles filed a pleading that attached *inter alia* copies of text messages, apparently between Charles and sister Jacquelyn Carter. The copies of the text messages were apparently intended to substantiate Charles's assertion that she was first told that Neely would receive a check with the stock proceeds and would "disburse" by sending a check to Charles, and then was later told that Neely said "if we bother her she will give it all to charity and send us the receipt."

At this stage in the proceedings, we of course assume the truth of Charles's factual allegations. Although Charles does not attach a legal theory to her claim for relief, we are mindful that the pleading requirements of Rule 8 of the Tennessee Rules of Civil Procedure are intended to be "simple and non-technical" for attorneys and for self-represented litigants alike. *Millen v. Gibbons*, No. W2011-00303-COA-R3-CV, 2011 WL 3246000, at *4; 2011 Tenn. App. LEXIS 415, at *12 (Tenn. Ct. App. July 29, 2011) (citing *Sanford v. Waugh & Co., Inc.*, 328 S.W.3d 836, 848 (Tenn. 2010) and Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-4(1) (3d ed. 2009)). From our reading of the pleadings and the record, Charles appears to assert she and her sisters reached an agreement – they "decided" – that Neely would process the proceeds from the sale of the FedEx stock through Father's estate and the proceeds would then be split in accordance with their Mother's will, and that Neely subsequently did not act in accordance with their agreement.

On appeal, Neely does not address the applicability of the doctrine of *res judicata* to Charles's claim except to assert that the "issue of ownership of the funds is *res judicata* as the [t]rial [c]ourt ruled." As noted above, *res judicata* is an affirmative defense. Under *Hannan*, " a defendant asserting an affirmative defense . . . shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense." *Hannan*, 270 S.W.3d at 9 n.6. When a defendant files a motion for summary judgment based on an affirmative defense, the defendant must "conclusively establish [the] affirmative defense" by pointing to undisputed facts that prove the defense. *McMahan v. Sevier County*, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at *2 (Tenn. Ct. App. July 3, 2007) (quoting *McCarley v. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). As the moving party, the burden remains on Neely "to prove the affirmative of [her] defense. . . ." *McMahan*, 2007 WL 1946650, at *3.

From the record, it appears undisputed that, after Father's estate was re-opened to handle the proceeds from the sale of the FedEx stock, Charles did not file a claim against the re-opened estate to receive a portion of the distribution. As executrix of Father's estate, Neely distributed the funds in accordance with the terms of Father's will. Father's re-opened estate was closed and there was no appeal from the Probate Court's order. Under these circumstances, to the extent that Charles sought a distribution from the Probate Court of a portion of the funds in Father's estate, this claim "could reasonably have been litigated in" the Probate Court proceedings. *Estate of Miller,* 2012 WL 3655244, at *2; 2012 Tenn. App. LEXIS 589, at *6-7 (citing *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979)). Thus, to this extent, we agree with the Chancery Court that Charles's claim would be barred under the doctrine of *res judicata*.

Charles's claims, however, do not appear to be limited to a claim against Father's estate, the subject of the Probate Court proceedings. The Chancery Court petition and Charles's response to the summary judgment motion appear to assert a contract claim of sorts directly against Neely – an assertion that Neely agreed that, upon receiving the proceeds from the sale of the FedEx stock, she would split them with her sisters in accordance with the terms of their Mother's will instead of Father's will. This type of agreement, sometimes characterized as a "family compromise," has been the subject of chancery court proceedings outside of probate. *See Wood v. Lowery*, 238 S.W.3d 747, 757 (Tenn. Ct. App. 2007) (chancery court lawsuit seeking specific performance of agreement by sisters, beneficiaries of father's will, to share inheritance with disinherited sister) ("Reaching family compromises has always been looked upon with favor by the courts.") (citing *Alexander v. Rhodes*, 63 Tenn. App. 452, 474 S.W.2d 655, 659 (Tenn. Ct. App. 1971)); *Williams v. Jones*, 388 S.W.2d 665, 672 (Tenn. Ct. App. 1963)). In the trial court below, Neely denied any oral agreement with Charles " to divide the subject proceeds," and demanded "strict proof" of any

-10-

such agreement.[8] In her appellate brief, Neely argues that Charles changed positions in regards to the amount Charles was to receive under the terms of the alleged oral contract. Thus, the record shows disputed issues of material fact on both the existence and the terms of a "family compromise" agreement. In the record before us, Neely has not shown that *res judicata* would bar Charles's claim of a separate agreement among the sisters to share the proceeds from the sale of the FedEx stock. Therefore, Neely has not "conclusively established" the affirmative defense of *res judicata* as to this claim. ***See McMahan,*** 2007 WL 1946650, at *2 (quoting ***McCarley***, 960 S.W.2d at 588).

In her Chancery Court petition, Charles also seeks "reimbursement" for expenses associated with securing the documentation to obtain the funds held by the State, and payment of "standard fees" for her hours of work. As with the distribution of the funds held by the State, it is unclear whether Charles is asserting that she should have received such "reimbursement" and hourly fees as part of the Probate Court's distribution from Father's re-opened estate, or as part of a separate agreement with her sisters. To the extent that Charles asserts that she should have received such funds from the Probate Court proceedings, we agree with the trial court that the claim is barred under the doctrine of *res judicata*. However, to the extent that Charles asserts that there was a separate agreement with her sisters or some other legal theory, Neely has not carried her burden of "conclusively establishing" that Charles is precluded from asserting this claim under the doctrine of *res judicata*.

#### CONCLUSION

To the extent that Charles's Chancery Court petition asserts that she should have received a distribution directly from the Probate Court proceedings, either of the funds held by the State for Father or for reimbursement of expenses or fees associated with securing such funds, we affirm the Chancery Court's grant of summary judgment in favor of Neely. As to the remainder, we must respectfully reverse the grant of summary judgment in favor of Neely. In light of this holding, we decline Neely's request for an award of damages pursuant to Tennessee Code Annotated § 27-1-122 for a frivolous appeal. All other issues raised on appeal are pretermitted.

---

[8]Neely also argued that any verbal agreement to split the proceeds was "irrelevant" because Mother was not a beneficiary of the funds and no estate was ever opened for Mother after her death, so Charles had no standing to assert any claim by Mother to the proceeds. The trial court's grant of summary judgment did not address these arguments and we decline to address them on appeal.

-11-

The decision of the trial court is affirmed in part and reversed in part as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed one-half against Petitioner/Appellant Cheryl O. Charles and one-half against Respondent/Appellee Gisselle Carter Neely, for which execution may issue if necessary.


_____

HOLLY M. KIRBY, JUDGE